UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DHT TRANSPORTATION, INC.,

    Plaintiff,

vs                                                       Case No: 10-12070
                                                         Honorable Victoria A. Roberts

ROBERT C. BOBB and DETROIT
PUBLIC SCHOOLS,

    Defendants.

_____/

## OPINION AND ORDER

**I. INTRODUCTION**

This matter is before the Court on Plaintiff's Motion for Ex Parte Temporary Restraining Order and Preliminary Injunction [Dkt. #2]. It was fully briefed. A hearing was held on June 3, 2010. Present were Gary Gordon appearing for Plaintiff, Hans Massaquoi appearing for Defendant Robert C. Bobb, and Theophilus Clemons appearing for Defendant Detroit Public Schools.

For the reasons stated, Plaintiff's Motion is **DENIED**.

**II. BACKGROUND**

Plaintiff DHT Transportation, Inc. challenges Defendants' Detroit Public Schools ("DPS") and Robert C. Bobb ("Bobb"), Emergency Financial Manager for the DPS, recent bidding process for student transportation services. Plaintiff seeks a temporary restraining order and preliminary injunction enjoining Defendants from executing

1

contracts related to a Request for Proposal ("RFP") for student transportation services, or from awarding any bus contract, absent a new bidding process conducted under the supervision of the Court or its designee.

Plaintiff says Defendants engaged in an unfair and unlawful bidding process, which included (1) hiring First Planning Solutions ("First Solutions") to consult and prepare written findings regarding DPS' student busing service, (2) permitting First Solutions to then use inside information gained in preparing its report, to allow its parent company, First Student, Inc. ("First Student"), to bid for the contract, and (3) using inside relationships to allow First Student to win the bid.

The Amended Verified Complaint alleges: Count 1 - Violation of the Due Process Clauses of the Michigan and United States Constitution; Count 2 - Violation of the Equal Protection Clauses of the Michigan and United States Constitutions - Disparate Sharing of Information Relevant to Bids; Count 3 - Violation of the Equal Protection Clauses of the Michigan and United States Constitutions - Disparate Treatment Under FOIA; Count 4 - Violation of the Equal Protection Clauses of the Michigan and United States Constitutions - Racial Preference in Awarding Bid to Safeway; Count 5 - Violation of Article I, Section 26 of the Michigan Constitution; Count 6 - Violation of the Takings Clause of United States and Michigan Constitutions; Count 7 - Violation of Fair and Just Treatment Clause of Michigan Constitution; Count 8 - Violation of Freedom of Information Act; Count 9 - Violation of 42 U.S.C. § 1983; Count 10 - Injunctive Relief; and, Count 11 - Declaratory Relief.

Defendants deny Plaintiff's allegations and oppose the Motion for preliminary injunction.

### III. STANDARD OF REVIEW

Based on Defendants' argument that they can successfully oppose this motion as a matter of law, Plaintiff urges the Court to apply a standard similar to that for a Rule 12(b)(6) motion. Rule 12(b)(6) authorizes dismissals for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When deciding a motion under this standard, the court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the plaintiff can prove facts in support of its claims that would entitle it to relief. The Court declines Plaintiff's request; the standard the Court must employ in considering a request for injunctive relief is clear, and decidedly different from the Rule 12(b)(6) standard.

The decision to issue a preliminary injunction or not, lies within the sound discretion of the district court. See *Golden v. Kelsey-Hayes*, 73 F.3d 648, 653 (6th Cir. 1996). As noted by the Supreme Court and Sixth Circuit, "[t]he purpose of a preliminary injunction is merely to preserve the status quo until a trial on the merits can be held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395, 101 S. Ct. 1830, 68 L. Ed. 2d 175 (1981); *Certified Restoration Dry Cleaning Network, L.L.C., v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007). The issuance of a preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urban Co. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002).

A Plaintiff seeking a preliminary injunction must establish that (1) it is likely to succeed on the merits, (2) it is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of the equities tips in its favor, and (4) an injunction is

in the public interest. *Amoco Production Co. v. Gambell*, 480 U.S. 531, 542 (1987).

**IV.     STANDING**

Defendants say Plaintiff, a disappointed bidder, lacks standing under federal law to bring federal causes of action because it does not assert claims under the Administrative Procedures Act ("APA") or similar legislation which evinces a congressional intent to create grounds for standing. Defendants cite *Club Italia v. Charter Twp. of Shelby, Michigan*, 470 F.3d 286 (6th Cir. 2006) for this proposition.

Defendants also say Plaintiff lacks standing to assert its state constitutional claims under Michigan law because only the public, through a taxpayer suit, has standing to enjoin a proposed contract.

Michigan courts hold that:

> [O]ne who is unsuccessful in bidding on a public contract does not have standing to challenge the result or the bidding process itself. This rule is based on the belief that statutes or ordinances requiring such bidding procedures for public contracts were adopted to benefit taxpayers or the general public.

*WDG Inv. Co., LLC v. Mich. Dept. of Mgmnt. and Budget*, Case No. 229950, 2002 WL 31424731, at *3 (Mich. Ct. App. 2002) (citing *Talbot Paving Co v. Detroit*, 109 Mich. 657, 67 N.W. 979, 980 (1896)).

Plaintiff says there is no question it has standing to bring its FOIA claim, which is not precluded under a "disappointed bidder" theory. Plaintiff also says that when *Club Italia* is carefully considered in its entirety, it actually supports Plaintiff's standing on the remaining claims.

In *Club Italia,* plaintiff brought suit alleging Shelby Township violated the Due Process and Equal Protection Clauses of the 14th Amendment of the U.S. Constitution,

4

as made actionable under § 1983, by accepting a soccer complex development proposal from Soccer City without first granting the plaintiff the opportunity to submit a bid on equal terms. Soccer City had performed environmental testing and submitted the sole formal development proposal. After the plaintiff expressed concern about the bidding process, the Township invited other interested parties to submit bids within three weeks. The plaintiff could not meet the strict deadline and did not submit a bid. The plaintiff sued and simultaneously moved for a preliminary injunction, which was denied. The plaintiff appealed the subsequent grant of summary judgment for Shelby Township.

On appeal, the Sixth Circuit concluded that because the plaintiff never actually submitted a bid, the district court erred in holding the plaintiff did not have standing as a disappointed bidder. *Id.* at 294. The court said the economic injury resulting from the Township's refusal to allow the plaintiff to bid on the contract, was sufficient to confer standing. *Id.* Hence, the court distinguished prospective bidders who are not allowed to bid and who suffer economic injury as a result, from actual unselected and dissatisfied bidders who suffer no injury.

However, the Tenth Circuit in *Southern Disposal, Inc. v. Texas Waste Management*, 161 F.3d 1259, 1266 (10th Cir. 1998) found that behind-the-scenes collusion between a government agency and one bidder that gives the bidder a superior bargaining position or makes the bidder privy to inside information, could give rise to a valid equal protection claim. It follows that such allegations can confer standing to bidders who did not have access to such information.

Accordingly, while the Court finds a "disappointed bidder" theory under *Club Italia*

5

does not confer standing on the Plaintiff, Plaintiff does have standing on its federal Equal Protection claims stemming from alleged FOIA violations, collusion/disparate sharing of information, and racial preferences. The remaining claims are either legally insufficient or the Defendants are immune from suit.

**V.    ELEVENTH AMENDMENT IMMUNITY**

Defendants say that Bobb, who was appointed by the Governor and whose authority is derived from state statute, is an arm of the State of Michigan. Thus, they say Bobb has immunity under the 11th Amendment of the United States Constitution, and that all claims against him for violations of state law are barred. At the hearing, DPS said it has derivative 11th Amendment immunity arising from Bobb's appointment as Emergency Financial Manager.

Plaintiff argues that DPS is a "political subdivision" and does not have 11th Amendment immunity. Plaintiff also says because Bobb is the Emergency Financial Manager for DPS, which is not an arm of the State, he is not acting as an arm of the State and is not shielded from Plaintiff's state constitutional claims.

Additionally, Plaintiff says that an exception to the 11th Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law. Plaintiff says that because its Complaint alleges continuing violations of federal law and seeks to enjoin those continuing violations, Bobb and DPS do not have 11th Amendment immunity. Plaintiff directs the Court to the statement in *Ernst v. Rising*, 427 F.3d 351, 364 (6th Cir. 2005), that the most important inquiry regarding 11th Amendment immunity is whether the state treasury may be impacted by a judgment in the case. It says that its request for injunctive relief will have no direct impact on the state treasury.

The Eleventh Amendment bars any suit, absent consent, against the state regardless of the form of relief requested. *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89,100-01, 104 S. Ct. 900, 907, 79 L. Ed. 2d 67 (1984). A state may waive its sovereign immunity by voluntarily submitting itself to federal court jurisdiction. *College Sav. Bank v. Florida Prepaid Postsecondary Exp. Bd.*, 527 U.S. 666, 675-676, 119 S. Ct. 2219, 2226, 144 L. Ed. 2d 605 (1999). However, the waiver of sovereign immunity must be done by act of the state legislature. *Ford Motor Co. v. Dep't of Treasury of Ind.*, 323 U.S. 459, 468-69, 65 S. Ct. 347, 352, 89 L. Ed. 389 (1945). There is no evidence of any such waiver in this case.

Eleventh Amendment immunity protects state agencies which are "arms of the state," but does not shield local political subdivisions. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 50 L. Ed. 2d 471, 97 S. Ct. 568 (1977). A school district is a political subdivision of the State. MCL 691.1401(b).

However, the Local Government Fiscal Responsibility Act ("The Act"), 1990 PA 72, MCL 141.1201 *et seq.*, is an exercise of the state's authority over its political subdivisions. *Flint City Council v. State*, 253 Mich. App. 378 (2002). Bobb was appointed as Emergency Financial Manager under the Act. Under the Act, an emergency financial manager is "not liable for any obligation of or claim against a school district resulting from actions taken in accordance with the terms of this article." MCL 141.1244.

Additionally, the contract between the State of Michigan and Bobb says that when he acts under the contract, he is deemed to be engaging in the exercise of a governmental function and is immune from liability for any action taken which he

7

reasonably believed to be within the scope of his authority granted by statute or under the contract. *See* Def. Resp., Exh. 2.  The contract further deems Bobb to be a state officer. *Id.*  Thus, Bobb is immune from suit.

Although the Court could find no cases directly on point, DPS likely has derivative 11th Amendment immunity as well.  School districts do not exist except as provided by the State; they have no functions, rights, or powers except as provided by the State. *East Jackson Public Schools v. State*, 133 Mich. App. 132, 348 N.W.2d 303, 306 (Mich. App. 1984); see also *Bradley v. Milliken*, 484 F.2d 215, 246 (6th Cir. 1973).     The State exercised authority over DPS' financial affairs and appointed Bobb to assume control over all fiscal matters.  Under the Act, "[u]pon appointment under MCL 141.1238, an emergency financial manager shall immediately assume control over all fiscal matters of, and make all fiscal decisions for, the school district for which he or she is appointed." MCL 141.1241.  Hence, DPS arguably has derivative immunity for any claims related to Bobb's exercise of his authority under the Act and his contract with the State of Michigan.

Furthermore, Plaintiff does not seek only prospective injunctive relief.  The Amended Complaint seeks punitive damages for FOIA violations. *See* Amended Comp., p. 30.  Thus, the exception to immunity asserted by Plaintiff does not apply.

The Court finds that Defendants are entitled to Eleventh Amendment immunity on the state claims; that immunity has not been waived**.**

## VI. PRELIMINARY INJUNCTION FACTORS

### A. LIKELIHOOD OF SUCCESS ON THE MERITS

### 1. Federal Due Process Claims: Liberty and Property

At the hearing, Plaintiff conceded that it does not have a strong likelihood of succeeding on its liberty claim.

The Court also finds that, Plaintiff does not have a strong likelihood of prevailing on its property interest claim, which Plaintiff describes as its ability to participate fairly and equitably in the bidding process.

The seminal case defining the boundaries of constitutionally protected property rights under the Fourteenth Amendment is the Supreme Court's decision in *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972):

> To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it . . . . Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined from an independent source such as state law -- rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

In other words, protected property interests are created by the operation of state law, while federal law determines whether the interest created, if any, rises to the level of a constitutionally protected property interest. See *Id*.

According to the Sixth Circuit, a constitutionally protected property interest in a publicly bid contract can be demonstrated in two ways. A bidder can either show that it actually was awarded the contract and then deprived of it, or that, under state law, the public body had limited discretion, which it abused, in awarding the contract. *Enertech Elec. v. Mahoning County Comm'rs*, 85 F.3d 257, 260 (6th Cir. 1996).

The Sixth Circuit specifically rejected the proposition that a disappointed bidder has a constitutionally protected property interest in the procedures used for awarding

contracts. See *Peterson Enterprises, Inc. v. Ohio Dep't of Mental Retardation*, 890 F.2d 416, 1989 WL 143563, at **3 (citing *Three Rivers Cablevision, Inc. v. Pittsburgh*, 502 F. Supp. 1118 (W.D. Pa. 1980)). The *Peterson* court held that any property interest is found in the benefit whose enjoyment is sought to be regulated by the procedure, namely, the award of the contract. *Id*.

Even if the Court accepts Plaintiff's allegations as true -- that the bidding procedure was flawed -- it cannot establish a due process violation solely from such a procedural violation. Plaintiff would have to show it had a protected interest in the actual award of the contract.

Valid contracts may constitute a property interest for purposes of due process. *Curtis Ambulance v. Shawnee Bd. Of County Comm'rs*, 811 F.2d 1371, 1375 (10th Cir. 1987). But, if circumstances reveal that the awarding of a contract pursuant to an RFP extends only an invitation to negotiate, rather than a binding agreement, then a legal claim of entitlement cannot exist as a matter of law. *Jan Rubin Assocs. v. Hous.* Auth., 2007 U.S. Dist. LEXIS 24116, at *28 (E.D. Ky 2007).

Here, Plaintiff's contract is scheduled to expire on June 30, 2010. Plaintiff has not alleged that it had a right of first offer, or otherwise had a right or entitlement to continue to perform under the contract beyond that date. Likewise, Plaintiff has not alleged that it was awarded a contract beyond June 2010 and then deprived of it. Plaintiff has shown nothing more than a unilateral expectation of contract renewal based on its 30-year history.

Plaintiff cannot establish a likelihood of success on its due process property claim.

### 2. Federal Takings Clause

Plaintiff's Federal Takings Clause Claim is based upon the Fifth Amendment of the United States Constitution.  Plaintiff says Defendants violated the Takings Clause by taking its ability to continue providing school bus service for DPS and depriving it of all economic and personal use of the school buses and infrastructure in which Plaintiff has invested millions.

The Takings Clause "provides that private property shall not be taken for public use, without just compensation; but it does not purport to define property rights." *Georgia v. Randolph*, 547 U.S. 103, 126 S.Ct. 1515, 1540, 164 L. Ed. 2d 208 (2006). The Supreme Court has "consistently held that the existence of a property interest is determined by reference to existing rules or understandings that stem from an independent source such as state law." *Id.* (quotations omitted).  To establish a property interest in a particular benefit, the plaintiff must have a "legitimate claim of entitlement to it." *Roth*, 408 U.S. at 577.

Plaintiff says it was not afforded a hearing prior to the "taking."  However, Plaintiff does not identify any state law which required a hearing.  As indicated above, Plaintiff has not established a protected property interest.  Plaintiff cannot establish a likelihood of success on its takings clause claim.

### 3. Federal Equal Protection Claims

Plaintiff cites three factual events which trigger DPS' federal equal protection violations.  First, DPS refused to respond to Plaintiff's FOIA requests while responding to FOIA requests from others.  Second, DPS provided information to one bidder that it

11

did not give to other similarly situated bidders. Third, Plaintiff alleges for the first time in its Reply, that after concluding the bidding and award process, DPS "peeled off" part of the bus contract to Safeway to ensure that an African American contractor was hired.

### a. Racial Discrimination

Plaintiff's amended Complaint alleges that DPS awarded part of the contract to Safeway because it was a minority contractor, and says that strict scrutiny is the appropriate standard for this equal protection claim. See Dkt #29, Amended Complaint, §60.

Defendants say that Plaintiff's race-based Equal Protection claim is an afterthought, based on hearsay newspaper articles. Defendants note that none of the articles says the contractors were selected based on race, and race was not a selection criteria; ABC, which was originally awarded 25% of the contract as the second lowest bidder, is also a minority contractor. Defendants say Safeway was awarded a part of the contract in return for its agreement to drop its pending lawsuits; Defendants thought this was preferable to protracted litigation and aimed at securing busing for Detroit school children.

Plaintiff presents no other evidence of race-based animus. Notably, the articles submitted by Plaintiff seem to focus more on the loss of Detroit or Michigan jobs to an out-of-state company, as opposed to the race of the owners of any company.

Although it cannot be said that Plaintiff has no likelihood of success on this claim, at this juncture Plaintiff's evidence - newspaper articles - is weak.

### b. Disparate Sharing of Information/Collusion

Plaintiff alleges that First Student had access to information which was not provided to other bidders, including information about bus fleets, repair costs, and staffing levels. Plaintiff says this access allowed First Student to establish relationships with key employees and to structure its bid to closely mirror the First Solutions consulting report. Plaintiff also says that First Student recruited four DPS managers and included their resumes with First Student's bid; this allowed First Student to represent in its bid that it employed key DPS personnel.

Plaintiff directs the Court's attention to the affidavit of Richard Klaus, the Senior Director of Business Development for FirstGroup America Company. In his affidavit, Klaus admits he (1) was involved in the consulting work performed for DPS, (2) supervised First Student's proposals which responded to the two RFPs for student transportation services issued by DPS in July and December 2009, and (3) was involved in negotiating and implementing the contract awarded to First Student by DPS. Hence, there is a direct admission of sharing of information between the parent and subsidiary.

Plaintiff cites *Southern Disposal, Inc.*, 161 F.3d at 1266, for the proposition that colluding behind the scenes to provide one bidder with information not provided to other bidders substantiates an equal protection claim.

Defendants say there is no case law which prohibits a subsidiary or parent company of a prior consultant from bidding on a project on which the consultant had prior involvement. Moreover, Defendants say they did not give First Student, the parent company, any information regarding the bid; it does not know whether First Solutions shared any such information. Defendants add that ABC and Safeway submitted bids

significantly lower than Plaintiff, despite any alleged disparate sharing of information. Defendants say the information was available to any bidder who carried out due diligence.

Plaintiff establishes a tenable equal protection claim based upon disparate sharing of information/collusion. Thus, it cannot be said that Plaintiff has no likelihood of success on this claim.

### c. Disparate Treatment Under FOIA

Plaintiff says Defendants treated it differently than similarly situated persons submitting requests pursuant to FOIA. Plaintiff says this disparate treatment under FOIA violates the Equal Protection Clause of the 14th Amendment.

Defendants say that tardiness in answering an FOIA request does not establish a constitutional violation.

If Plaintiff had merely alleged that Defendants denied a FOIA request and that it was seeking redress for such denial under § 1983, the Court would agree that Plaintiff failed to state an actionable constitutional claim. However, Plaintiff also alleges in its Amended Complaint that Defendants -- by their refusal to honor Plaintiff's pre-bid requests for information and subsequent FOIA requests -- violated its right to equal protection and engaged in racial preferences. Thus, Plaintiff alleged constitutional deprivations for which it may seek relief under § 1983. *Beedle v. DeMasi*, 2006 U.S. Dist. LEXIS 98136 at *3-4 (6th Cir. 2006). It cannot be said that Plaintiff has no likelihood of success on this claim.

### 4. State Equal Protection/Racial Preference Claims

14

Plaintiff's state constitutional claims are based on the same factual events which underlie the federal claims. Plaintiff relies on the Michigan Constitution, which provides:

> No person shall be denied the equal protection of the laws; nor shall any person be denied the enjoyment of his civil or political rights or be discriminated against in the exercise thereof because of religion, race, color or national origin. The legislature shall implement this section by appropriate legislation.

Const. Mich., Art. I, § 2.

Plaintiff's racial preference claim is based on Michigan's anti-affirmative action constitutional amendment:

> The state shall not discriminate against, or grant preferential treatment to, any individual or group on the basis of race, sex, color, ethnicity, or national origin in the operation of public employment, public education, or public contracting.

Const. Mich., Art. I, § 26(2). The "state" includes a school district. *Id.* at § 26(3).

However, as indicated above, Defendants are entitled to Eleventh Amendment immunity on the state claims. Plaintiff has no likelihood of success on this claim.

### 5. State Fair and Just Treatment Clause Claims

Plaintiff says although this claim is globally related to DPS' unfair treatment of Plaintiff in the bidding process, and Defendants' failure to give it access to the First Solutions consulting report, the constitutional genesis of this claim is DPS' treatment of Plaintiff in response to Plaintiff's FOIA request. Plaintiff says DPS had the responsibility to treat Plaintiff fairly during the FOIA request and appeal process, and that DPS is improperly attempting to use its inaction as a sword to defeat Plaintiff's claims.

Defendants say this claim fails as a matter of law as well, because protection under the fair and just treatment clause of the Michigan Constitution only applies to legislative and executive investigations or hearings.

15

The Michigan Constitution provides that:

> The right of all individuals, firms, corporations and voluntary associations to fair and just treatment in the course of legislative and executive investigations and hearings shall not be infringed. Const. Mich. 1963, Art I, § 17.

This constitutional provision provides no protection unless Plaintiff's claims arose out of an investigation. See *Carmacks Collision, Inc. v. City of Detroit*, 262 Mich. App. 207, 684 N.W.2d 910 (2004) (citing *Johnson v. Wayne Co*, 213 Mich. App. 143, 155, 540 N.W.2d 66 (1995) (fair and just treatment clause did not apply because case did not involve a hearing or investigation). Although at the hearing Plaintiff suggested that the Report prepared by First Solutions arose from an investigation of DPS' transportation costs, it is a stretch for it to now couch this case as deriving from an investigation.

Additionally, as indicated above, Defendants are entitled to Eleventh Amendment immunity on the state claims. Plaintiff has no likelihood of success on this claim.

### 6. State Takings Clause Claim

Plaintiff's state Takings Clause claim is based on Const. Mich. 1963, Art X, § 2:

> Private property shall not be taken for public use without just compensation therefore being first made or secured in a manner prescribed by law.

Plaintiff says Defendants violated the Takings Clause by taking its ability to continue providing school bus service for DPS and depriving it of all economic and personal use of the school buses and infrastructure in which Plaintiff has invested millions. Defendants say this claim fails as a matter of law because Plaintiff suffered no deprivation of a property right.

As indicated above, Plaintiff has not established a protected property interest. Additionally, Defendants are entitled to Eleventh Amendment immunity on the state

16

claims. Plaintiff has no likelihood of success on this claim.

### 7. Conclusion on Likelihood of Success on The Merits

Of all of the Plaintiff's claims, only the federal equal protection claims based on racial discrimination, FOIA violations and collusion/disparate sharing of information have some likelihood of success on the merits.

This factor weighs in favor of Defendants.

**B. IRREPARABLE HARM**

Plaintiff says its harm is irreparable because its business, 80% of which is derived from its contract with DPS, will collapse from the loss of the contract and the domino effect of losing other bids. Plaintiff claims that the Oak Park school district refused to award it a transportation contract, even though Plaintiff was the lowest bidder, due to concerns about Plaintiff's solvency as a result of the loss of this contract.

Additionally, Plaintiff argues that DPS would suffer no harm if the Court maintained the status quo while this matter is pending. To the extent that DPS would suffer any financial harm, Plaintiff says it would agree to provide service at the same rate agreed upon by the other three vendors. Plaintiff says it cannot be reasonably compensated through monetary damages after the fact.

Defendant counters that Plaintiff's alleged harm is not irreparable, but DPS would sufferable irreparable injury if an injunction issues. First, Defendants say DPS is effectively $500 million in debt and facing possible receivership. The new contract will save DPS several million dollars per year over its current costs.

Second, DPS' current transportation contracts expire on June 30, 2010.

Additionally, at least 100 of DPS' bus drivers retired on June 1, 2010. If the Court enjoins Defendants from entering into new contracts with First Student, ABC and Safeway, DPS says it will not have transportation contracts in place and will be unable to provide transportation to thousands of summer students.

Third, under the new contract, DPS will end its bus service and outsource student transportation to three vendors. First Student will hire eligible current DPS bus drivers. First Student must interview those drivers, perform background checks and credential verifications, and provide training as soon as possible. First Student must also map out new bus routes and implement service schedules. The grant of injunctive relief would derail this process.

Last, Defendants say that DHT faces no imminent harm because the winning bidders will not take over any DHT bus routes until September 2010, at the start of the next year. They say DHT's alleged harm will not begin to accrue until that time. They note that other districts are requesting bids on contracts for transportation services, and Plaintiff has not alleged that Defendants prevented it from bidding on those contracts and obtaining new business. At the hearing, Plaintiff's counsel stated that Plaintiff has two bids outstanding for school district transportation.

Plaintiff presents no evidence regarding its gross revenues and business affairs, no other contracts it bid on, and no denial letters to support its claim of irreparable harm. By contrast, DPS is the largest school system in the state, and is responsible for providing bus transportation to thousands of Detroit students. Coordinating such large-scale transportation involves major planning, and if suspended would likely derail the transition and disrupt bus service. It would also leave the current DPS bus drivers in a

18

state of legal limbo.

This factor weighs in favor of Defendants.

### C. BALANCE OF THE EQUITIES

Plaintiff says the Court essentially must balance the denial of injunctive relief and the collapse of its business, against maintaining the status quo and allowing it to continue providing bus service while this matter is pending. Plaintiff asks the Court to decide this factor in its favor.

Defendants counter that DPS will suffer great harm if an injunction issues, and Plaintiff's alleged harm is speculative, isolated and easily remedied by money damages, if proven.

The potential economic harm to DPS, balanced against the absence of demonstrable evidence of the collapse of Plaintiff's business, tips this factor in favor of Defendants.

### D. PUBLIC INTEREST

Plaintiff says the public interest demands a good value and a fair process. Plaintiff says it could have matched or beaten the winner bidder's bid if it had access to the same information given to First Student. Plaintiff also claims that First Student cannot provide services at its original bid price due to the addition of ABC and Safeway to the contract. Plaintiff argues it is not in the public interest to spend public money under such a cloud of suspicion.

Defendants say the public has a strong interest in keeping DPS financially viable, and that cost reduction is a crucial part of making that possible. They say the new

contract will save the cash-strapped school district approximately $30 million over the next five years. Hence, Defendants say an injunction will cause severe economic harm to DPS and the public. They say the public's interest in a viable school system predominates over the interests of a single disappointed bidder.

This factor does not weigh in favor of either party.

## V. CONCLUSION

Plaintiff may have some likelihood of success on its federal equal protection claims. Balancing this, however, against the other factors the Court has taken into account, leads the Court to conclude that Plaintiff is not entitled to injunctive relief.

Plaintiff's Motion is **DENIED**.

**IT IS ORDERED**.

S/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated: June 4, 2010

> The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on June 4, 2010.
>
> s/Carol A. Pinegar
> Deputy Clerk